In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 11-8029, 12-8030

LARRY BUTLER, *et al.*, individually and
on behalf of all others similarly situated,

*Plaintiffs-Appellants,*
*Cross-Appellees,*

*v.*

SEARS, ROEBUCK AND CO.,

*Defendant-Appellee,*
*Cross-Appellant.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 06 C 07023, 07 C 00412,
08 C 01832—**Sharon Johnson Coleman**, *Judge.*

SUBMITTED SEPTEMBER 28, 2012—DECIDED NOVEMBER 13, 2012

Before POSNER, RIPPLE, and HAMILTON, *Circuit Judges.*

POSNER, *Circuit Judge.*  The parties to this class action suit, which is based on the warranty laws of six states, petitioned us to review separate orders by the district

court ruling on motions for class certification filed by the plaintiffs. Fed. R. Civ. P. 23(f). The suit is really two class actions because the classes have different members and different claims, and therefore they should have been severed, though both arise from alleged defects in Kenmore-brand Sears washing machines sold in over-lapping periods beginning in 2001 and 2004. One class action complains of a defect that causes mold (the "mold claim"), the other of a defect that stops the machine inopportunely (the "control unit claim"). The district court denied certification of the class complaining about the defect that causes mold and granted certification of the class complaining about the defect that causes the sudden stoppage. The denial of certification of the mold class precipitated the petition for review by the plaintiffs who are complaining about the mold, while the grant of certification to the plaintiffs (a different set of named plaintiffs) complaining about the stoppage precipitated Sears's petition for review.

We have accepted the appeals in order to clarify the concept of "predominance" in class action litigation. Rule 23(b)(3) conditions the maintenance of a class action on a finding by the district court "that the questions of fact or law common to class members predominate over any questions affecting only individual members." If there are no common questions or only common questions, the issue of predominance is automatically resolved. Any other case requires "weighing" unweighted factors, which is the kind of subjective determination that usually—including the deter-

mination whether to certify a class—is left to the district court, subject to light appellate review. *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 723 (7th Cir. 2011); Charles Alan Wright, Arthur R. Miller & Mary K. Kane, 7AA *Federal Practice and Procedure* § 1785, pp. 370-72 (3d ed. 2005).

The mold claim pertains to all Kenmore-brand front-loading "high efficiency" washing machines manufactured by Whirlpool Corporation and sold by Sears since 2001. The claim is that because of the low volume of water used in these machines and the low temperature of the water, compared to the volume and temperature of the water in the traditional top-loading machine, they don't clean themselves adequately and as a result biofilm—a mass of microbes—forms in the machine's drum (where the washing occurs) and creates mold, which emits bad odors. Traditional household cleaners do not eliminate the biofilm, the mold, or the odors. Roughly 200,000 of these Kenmore-brand machines are sold each year and there have been many thousands of complaints of bad odors by the owners.

Sears contends that Whirlpool (which remember is the actual manufacturer of the washing machines, not Sears) made a number of design modifications as a result of which different models are differently defective and some perhaps not at all, and therefore common questions of fact concerning the mold problem and its consequences do not predominate over individual questions of fact. The judge accepted this argument; it is the ground on which she denied the motion to certify the mold class.

Although Sears contends that during the period covered by the complaint it sold 27 different Kenmore-brand models, Whirlpool made only five design changes that relate to mold. The basic question in the litigation—were the machines defective in permitting mold to accumulate and generate noxious odors?—is common to the entire mold class, although the answer may vary with the differences in design. The individual questions are the amount of damages owed particular class members (the owners of the washing machines).

Predominance is a question of efficiency. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615-16 (1997); Committee Notes to 1966 Amendment to Fed. R. Civ. P. 23; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 n. 12 (11th Cir. 1997); William B. Rubenstein, 2 *Newberg on Class Actions* § 4:49 (5th ed. 2012). Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials? A class action is the more efficient procedure for determining liability and damages in a case such as this involving a defect that may have imposed costs on tens of thousands of consumers, yet not a cost to any one of them large enough to justify the expense of an individual suit. If necessary, a determination of liability could be followed by individual hearings to determine the damages sustained by each class member (probably capped at the cost of replacing a defective washing machine—there doesn't seem to be any claim that the odors caused an illness that might support a claim for products liability as distinct from one for

breach of warranty). But probably the parties would agree on a schedule of damages based on the cost of fixing or replacing class members' mold-contaminated washing machines. The class action procedure would be efficient not only in cost, but also in efficacy, if we are right that the stakes in an individual case would be too small to justify the expense of suing, in which event denial of class certification would preclude any relief.

Sears argues that most members of the plaintiff class did not experience a mold problem. But if so that is an argument not for refusing to certify the class but for certifying it and then entering a judgment that will largely exonerate Sears—a course it should welcome, as all class members who did not opt out of the class action would be bound by the judgment.

In two states (see *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 920-23 (2001); *Schiffner v. Motorola, Inc.*, 697 N.E.2d 868, 874-76 (Ill. App. 1998)), or possibly three (see *DaimlerChrysler Corp. v. Inman*, 252 S.W.3d 299, 304-07 (Tex. 2008)), of the six states in which members of the class reside, a defective product can be the subject of a successful suit for breach of warranty even if the defect has not yet caused any harm. If, as appears to be the case, the defect in a Kenmore-brand washing machine can precipitate a mold problem at any time, the defect is an expected harm, just as having symptomless high blood pressure creates harm in the form of an abnormally high risk of stroke. A person who feels fine, despite having high blood pressure, and will continue feeling fine until he has a stroke or heart

attack, would expect compensation for an unlawful act that had caused his high blood pressure even though he has yet to suffer the consequences. Every class member who claims an odor problem will have to prove odor in order to obtain damages, but class members who have not yet encountered odor can still obtain damages for breach of warranty, where state law allows such relief—relief for an expected rather than for only a realized harm from a product defect covered by an express or implied warranty.

Sears does not contend that any of Whirlpool's design changes eliminated the odor problem but only that they reduced its incidence or gravity. The number of buyers of each design of the Kenmore-brand machine who encountered mold would have been large even if those who bought later in the product cycle were less likely to encounter the problem. Should it turn out as the litigation progresses that there are large differences in the mold defect among the five differently designed washing machines, the judge may wish to create sub-classes; but that possibility is not an obstacle to certification of a single mold class at this juncture.

Sears argues inconsequently that it did not know about the defects in all the different models. But liability for breach of warranty is strict. Sears may be able by means of a suit for contribution or indemnity to shift the cost of any damages it incurs in the present case to Whirlpool, but that is not a defense to liability.

Sears also makes arguments that were not considered by the district court, such as that mold problems may

reflect how the owner of a washing machine uses it. That would be a defense of mishandling to the charge of breach of warranty. Sears offers no details.

The Sixth Circuit recently upheld the certification of a single mold class in a case, identical to this one (except that it did not involve the other claim in this case, the control unit claim), against Whirlpool. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*, 678 F.3d 409 (6th Cir. 2012). For us to uphold the district court's refusal to certify such a class would be to create an intercircuit conflict—and a gratuitous one, because, as should be apparent from the preceding discussion, we agree with the Sixth Circuit's decision.

We turn to Sears's appeal from the certification of a class of buyers of Kenmore-brand washing machines who incurred a harm because of the defective control unit. Each washing machine has a computer device that gives instructions to the machine's moving parts. This "central control unit" consists of circuit boards that are soldered together. In 2004 a company called Bitron that supplied the central control units in the Kenmore-brand washing machines altered its manufacturing process in a way that inadvertently damaged the layer of solder, causing some of the control units mistakenly to "believe" that a serious error had occurred and therefore to order the machine to shut down even though nothing was the matter with it. Sears is alleged to have known about the problem but to have charged each owner of a defective machine hundreds of dollars to repair the central control unit. The defect was cor-

rected in 2005 but Sears continued to ship machines containing the earlier-manufactured, defective control units.

The principal issue is whether the control unit was indeed defective. The only individual issues—issues found in virtually every class action in which damages are sought—concern the amount of harm to particular class members. It is more efficient for the question whether the washing machines were defective—the question common to all class members—to be resolved in a single proceeding than for it to be litigated separately in hundreds of different trials, though, were that approach taken, at some point principles of res judicata or collateral estoppel would resolve the common issue for the remaining cases.

Again the district court will want to consider whether to create different subclasses of the control unit class for the different states. That should depend on whether there are big enough differences among the relevant laws of those states to make it impossible to draft a single, coherent set of jury instructions should the case ever go to trial before a jury.

To summarize, the denial of class certification regarding the mold claim is reversed and the grant of class certification regarding the control unit claim is affirmed.